Neil CONWAY and Joan Conway, his wife, and Neil Conway To the Use of Roadway Express, Inc., Plaintiffs,

v.

WHITE TRUCKS, A DIVISION OF WHITE MOTOR CORPORATION; Volvo White Truck Corporation, Successor Corporation to White Trucks, a Division of White Motor Corporation; and National Seating Company and John Doe Corporation, Defendants.

Civ. No. 84–0392.

United States District Court, M.D. Pennsylvania.

July 28, 1988.

Todd J. O'Malley, Scranton, Pa., for plaintiffs.

David Knauer, Cleckner & Fearen, Harrisburg, Pa., for Neil Conway and Joan Conway.

P. Daniel Altland, Cleckner & Fearen, Harrisburg, Pa., for Roadway Exp., Inc.

William C. Foster, Richard A. O'Halloran, Kelly, Harrington, McLaughlin & Foster, Charles W. Craven, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, Pa., Tellie, Durkin, Weinberger, Murphy & Piazza and Joseph A. Murphy, Scranton, Pa., for Volvo White Truck Corp.

John R. Lenahan, Jr., Lenahan & Dempsey, P.C., Scranton, Pa., for National Seating Co.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

### INTRODUCTION

This Memorandum addresses the post trial motions of Defendant Volvo White which seek this Court to amend its earlier judgment on the issue of successor liability, and moves for a judgment notwithstanding the verdict or for new trial on the questions of liability and damages. Because this Court is persuaded by Volvo White's arguments that it may not be held liable under the circumstances of this case on any theory of successor corporate liability, this Court will vacate the earlier judgments entered against Volvo White and will direct that judgment be entered in its favor.

### FACTS AND PROCEDURAL HISTORY

On March 22, 1982, the Plaintiff, Neil Conway, was operating a tractor trailer for Roadway Express on U.S. Route 22/78 in Northampton County, Commonwealth of Pennsylvania. The tractor trailer was manufactured by White Motor Corporation and contained a seat manufactured by National Seating. While driving, the Plaintiff struck a pothole in the road causing the seat to dislodge and propel him forward into the dash area causing injuries to the Plaintiff, including an abrasion of the right knee which developed into a traumatic chondromalacia of the patella.

Based on this incident, Neil and Joan Conway initially filed suit in the Court of Common Pleas of Lackawanna County in January of 1984. This action was subsequently filed against White Motor Corporation, National Seating Company and Volvo White Truck Corporation, basing liability on Section 402A of the Restatement (Second) of Torts. Plaintiffs maintain that the seat and truck were defectively designed and that there was insufficient clearance for the driver's knees in the event of a foreseeable seat malfunction. The Plaintiffs aver that Volvo–White Truck Corporation is liable under Pennsylvania law as a successor corporation because it continued to market the same product line and because of a continuity of operations.

Because the relationship between Volvo White and White Motor Corporation is fundamental to the understanding of this Memorandum, the factual circumstances underlying the transfer of various assets from White Motor Corporation to Volvo White Truck Corporation follow.

Of initial significance is the fact that White Motor Corporation manufactured the White Road Boss II Tractor Trailer which was involved in the accident in the instant case and that Volvo–White played no part in the manufacture and design of the tractor trailer. The vehicle was sold by White in 1977. White and its affiliates filed for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 ("Code"),

11 U.S.C. § 1101 *et seq.*, on September 4, 1980.[1]

In the course of White Motor Corporation's reorganization, A.B. Volvo, a Swedish Corporation, purchased various truck manufacturing facilities of White Motor Corporation on July 9, 1981. A.B. Volvo is the parent corporation of Volvo White Truck Corporation. The assets purchase agreement between A.B. Volvo and White dated June 9, 1981, stated in paragraph 2.02 that "Volvo will not under any circumstances assume any liabilities of White (i) for personal injury or property damage because of alleged negligence or breach of warranty or under any other theory of product liability or (ii) to pay damages (other than the purchase price of goods or services provided to White) by reason of any breach of any obligation or any other act or admissions of White. Purchase Agreement, Article II, Section 2.02. By order of July 27, 1981, known claimants, shareholders, debenture holders and persons requesting notice, were mailed notice of hearings on the proposed sale. On August 13, 1981, the Bankruptcy Court for the Northern District of Ohio determined the sale was appropriate outside the context of a plan of reorganization and issued an order approving the purchase agreement "in all respects." A final agreement entered into between A.B. Volvo and White on June 15, 1983, provided that Volvo would assume White's product liability for accidents occurring between May 1, 1983 and December 31, 1992, involving vehicles assembled prior to September 1, 1981. The supplemental agreement was approved by Court Order of June 29, 1983.

On August 1, 1983, the United States Bankruptcy Court for the Northern District of Ohio entered an Order fixing August 30, 1983, as the last day by which holders of any and all claims against White Motor Corporation could file Proofs of Claim with the Bankruptcy Court or be forever barred from voting or receiving distributions in connection with said claims, pursuant to that Court's authority under Bankruptcy Rule 3003(c)(3). Notice of the bar date was provided to potential claimants through direct mail contact and by national publications, including the *Wall Street Journal* and the *New York Times*.

In addition to a claimant's obligation to file a proof of claim, the Honorable Ann C. Aldrich of the United States District Court for the Northern District of Ohio, filed an Order dated February 17, 1984, which provided that any party having filed a timely proof of claim or later permitted to do so, who had not commenced a civil action against White, would be permitted to do so within 30 days of the date of that Memorandum and Order. Thus, even those who had filed a proof of claim were also required to commence suit by March 18, 1984 or be barred from proceeding with that suit against White Motor Corporation.

On September 2, 1983, White Motor Corporation filed its second modified plan of reorganization, which was amended on November 16, 1983. This plan of reorganization was approved by the United States Bankruptcy Court for the Northern District of Ohio on November 18, 1983. That plan made provisions for the disposition of product liability claims pending against White Motor Corporation and created a

---

**1.** Chapter 11 of the Code states Congressional policy that the debtor, its creditors and employees, and the public at large, all benefit when the debtor is given an opportunity to reduce or extend debts so that it can return to financial viability.

> The purpose of a business reorganization case, unlike a liquidation case, is to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders. The premise of a business reorganization is that assets that are used for production in the industry for which they are designed are more valuable than those same assets sold for scrap. Often, the return on assets that a business can product is inadequate to compensate those who have invested in the business. Cash flow problems may develop, and require creditors of the business, both trade creditors and long-term lenders to wait for payment of their claims. If the business can extend or reduce its debts, it often can be returned to a viable state. It is more economically efficient to reorganize than to liquidate, because it preserves jobs and assets.

> *H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 220 (1977), reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6179 ["House Report"].

trust and trust fund to administer and provide for outstanding claims.

Plaintiffs, Neil and Joan Conway, made no attempt to file any proof of claim with the Bankruptcy Court at any time. Roadway Express, Inc. did not file a Proof of Claim until after the period of time designated by the Bankruptcy Court had expired.

By agreement of the parties and pursuant to an Order entered by the Honorable William J. O'Neill of the United States Bankruptcy Court for the Northern District of Ohio, the objection of the trustee to the attempt of Roadway Express, Inc., to file a late Proof of Claim in this matter was sustained, with prejudice to Roadway's right to refile any direct claim against White Motor Corporation.[2]

As previously noted, White Motor's modified plan of reorganization was confirmed on November 18, 1983. On confirmation, White Motor was discharged "from any debt that arose before the confirmation date...." Plan of Reorganization, Article VI, Section 6.1.

In emerging from the bankruptcy reorganization White changed its named to Northeast Ohio Axle, Inc. ("NEOAX"). NEOAX continued White's Truck axle manufacturing operation in Cleveland, Ohio as well as its recreation vehicle productions. NEOAX further branched into manufacturing parts for piston aircraft engines, components for nuclear submarines and landing gears for heavy truck trailers. Having emerged from the reorganization, NEOAX is insulated from being pursued by creditors of White Motor. Instead, any judgment against White would not result in personal liability to NEOAX; rather, White's insurers, its co-defendants, and the reserve fund established in the reorganiza-

tion were to be responsible for such liability.

Volvo White Truck Corporation's post trial brief described this situation as relates to the circumstances of Plaintiffs' case:

As part of the White bankruptcy reorganization plan, the proceeds of the sale of White's other assets were placed into a trust generally used to make distribution payments to claimants (N.T. 1/29 p. 126). A settlement was effected between Roadway and the trust on the claim filed by Roadway in October, 1984 (N.T. 1/28 p. 131–137). Although the trustee's consultant for products liability' matters (N.T. 1/28 p. 120, 126) notified plaintiff Conway's attorneys that a proof of claim had to be filed in connection with this case (N.T. 1/28 p. 129–131), plaintiff Conway filed no such proof of claim (N.T. 1/28 p. 131). Funds were available to satisfy accident claims such as plaintiff Conway's, and plaintiff Conway might have been able to proceed with his claim against White had he filed the proof of claim required by the trustee (N.T. 1/28 p. 128–131, 148–149, 156–157, 160–161). Plaintiff Conway did not file a proof of claim with the trustee....

Document 150, pp. 9–10.

As mentioned previously, Plaintiffs filed the above-captioned action on March 21, 1984. Named as Defendants in this action were Volvo White Truck Corporation, White Motor Corporation, National Seating Company, and John Doe Corporation. The various counts in the complaint may be summarized as follows:

*Count 1 and 2:* Plaintiffs v. White Motor Corporation pursuant to Section 402(a) of the Restatement of Torts (Second).

*Count 2:* Plaintiffs v. White Motor Corporation alleging negligence in the de-

---

**2.** The United States Bankruptcy Courts under are governed by procedural rules provided for under Title 11 of the United States Code. Bankruptcy Rule 3001 defines a Proof of Claim as a "written statement setting forth a creditor's claim." Bankruptcy Rule 3002(a) provides that "an unsecured creditor or an equity security holder must file a proof of claim or interest in accordance with this rule for the claim or inter-

est to be allowed ..." Finally, Bankruptcy Rule 3003(c)(3) provides that "the court shall fix and for cause shown, may extend the time within which proofs of claim or interest may be filed." The provisions of these rules hold that where an entity fails to file a proof of claim by the date fixed for such filings by the Bankruptcy Court the claim will not be allowed.

sign, installation, and manufacturer of the tractor trailer.

*Count 3:* Plaintiffs v. Volvo White Truck Corporation alleging that Volvo White was a successor corporation to White Motor Corporation.

*Count 4:* Plaintiffs v. National Seating Company pursuant to Section 402(a) Restatement of Torts (Second).

*Count 5:* Plaintiffs v. a fictitious "John Doe Corporation" based on negligence.

*Count 6:* Plaintiffs v. White Motor Corporation based upon breach of express warranties.

*Count 7:* Plaintiffs v. White Motor Corporation claiming breach of an implied warranty of merchantability and implied warranty for fitness for a particular purpose.

*Count 8:* Plaintiffs v. Volvo White Truck Corporation claiming that it is a successor corporation of White Motor Corporation and is therefore responsible for and assume the liabilities of the Defendant, White Motor Corporation.

*Count 9:* Plaintiffs v. National Seating Company alleging a breach of express warranties.

*Count 10:* Plaintiffs v. National Seating Company alleging a breach of an implied warranty of merchantability and an implied warranty for fitness for a particular purpose.

*Count 11:* Plaintiffs v. a fictitious "John Doe Corporation" alleging breach of express warranties.

*Count 12:* Plaintiffs v. National Seating Company alleging negligence on National's part in the design and installation of the seat assembly.

*Count 13:* Plaintiffs v. All Defendants seeking damages for Plaintiff Joan Conway for the loss of her husband's assistance and society.

Following service of the complaint, the Defendants filed answers and discovery commenced. Thereafter, on July 29, 1985, the Defendant White Motor Corporation filed a motion for summary judgment. White Motor Corporation predicated their motion on the fact the Plaintiffs had failed to timely file a proof of claim with the United States Bankruptcy Court for the Northern District of Ohio with regard to their claims against White Motor Corporation and that such a failure barred any proceeding against White Motor Corporation. Plaintiffs did not oppose the grant of White's dismissal from this case and this Court entered an Order dated September 30, 1985 granting White Motor Corporation's motion for summary judgment.

On July 31, 1985, Volvo–White Truck Corporation filed a motion for summary judgment asserting that it did not fit into any of the traditional four exceptions to the general rule of non-liability for a successor corporation; and that the product line exception to the general rule was inapplicable since White Motor Corporation was not required, nor did it, dissolve after the sale of assets to Volvo–White. Instead, it continues to exist as a viable, ongoing concern under the name change of Northeast Ohio Axle, Inc. Additionally, Volvo–White alleged that it did not purchase all or substantially all of the assets of White Motor Corporation, but that White retained certain assets and divisions including its Cleveland Manufacturing facility. Finally, Volvo–White stated:

> As a matter of public policy, successor liability should not be imposed upon defendant, Volvo–White Truck Corporation. The Bankruptcy Act, 11 U.S.C.A. Section 1141(c) states: "... after confirmation of a plan, the property dealt with by the Plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners and the debtor." The bankruptcy plan in accordance with which Volvo purchased certain assets from White Motor Corporation was approved by the bankruptcy court on June 15, 1983. Therefore, Volvo–White purchased these assets with free and clear title under the code.

> Volvo–White's purchase of these assets allowed White Motor Corporation to remain in business as a viable entity, albeit one operating under a different name. This purchase as was stated above, met with the approval of the Bankruptcy Court. Therefore, to require Volvo–

White to succeed to the liabilities of White Motor Corporation because of this purchase of assets, which purchase allowed White Motor to maintain business operations, would be unfair and unjust. Document 59 at pp. 19–20.

On October 15, 1985, this Court filed a Memorandum and Order denying Volvo–White's motion for summary judgment. In denying the motion for summary judgment, this Court noted that it was doubtful that Volvo–White could be held liable under Pennsylvania's traditional exceptions to the general rule of non-liability, but nonetheless, refused to grant summary judgment in light of *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981) which we perceived as significantly expanding the scope of a successor corporation's liability for the manufacturing errors of a predecessor corporation.

Thereafter, the parties agreed to adjudicate the Plaintiffs' successor liability claim without a jury and, accordingly, this Court tried the threshold issue against Volvo–White on January 28 and 29, 1986. During that portion of the case, this Court denied Volvo–White's motion for a directed verdict and at the close of the evidence took the matter under advisement. On February 6, 1986, the Court ruled that the Plaintiffs had prevailed on their successor liability claim against Volvo–White.

Plaintiffs' product liability claims were then tried before a jury between February 6, 1986 and February 13, 1986. The trial resulted in a jury concluding that Volvo–White was liable for damages in the total amount of $1,230,532, and that National Seating Company was not liable.

In a written opinion on the successor corporation claim, this Court embraced the rule "that a successor corporation does not assume the legal liabilities of the transfer corporation merely because of its succession to the transferror's assets." *See Conway v. White Trucks, a division of White Motor Corp.*, 639 F.Supp. 160 (M.D.Pa. 1986). Furthermore, the Court ruled that Volvo White could not be found liable under the traditional exceptions to the general rule of successor corporate non-liability

(1) as one who expressly or impliedly accepted White's obligations, (2) as a consolidation or merger with White, (3) as a continuation of White, or (4) as a participant to a transaction which was entered into primarily for the purpose of escaping liability. *See Conway*, 639 F.Supp. at 162. However, this Court found that Volvo–White could be found liable under the "product line" theory of liability since "not only did Volvo–White acquire all of White's truck manufacturing capability, but also that Volvo–White required that such operations of White which continued to exist after its bankruptcy would be known by another name."

In response to the foregoing, Volvo–White filed a motion under Federal Rules of Civil Procedure 52(b), 50(b) and 59 for the Court to amend its findings, to make additional findings, to alter or amend its judgment, or in the alternative, to grant a new trial as to all the issues. On March 25, 1986, this Court ordered that Volvo–White Truck Corporation would be required to file its brief in support of its post-trial motions within 30 days after the receipt of the transcript of testimony in this case. On April 15, 1986, the Defendant, Volvo–White Truck Corporation, filed a supplemental post-trial motion. On February 6, 1987, the court reporter filed a certified transcript of the testimony in this case with the Court. Thereafter, Volvo–White Truck Corporation filed its brief in support of the post-trial motion.

Volvo–White's arguments contained in that brief may be split into two separate categories: (1) those relating to the finding of successor liability; and (2) those relating to errors occurring in the course of the jury trial.

Regarding the motions challenging this court's finding of successor liability, Volvo argues that it is entitled to judgment in its favor because it should not have been made a successor into the tort liability of White since (1) Plaintiffs' continuity claim should be expressly rejected; (2) the product line theory should not be adopted as the law of Pennsylvania; (3) the product line theory is inapplicable to the circumstances of this

case; and (4) that judgment against Volvo–White is based on clearly erroneous facts. Additionally, Volvo–White maintains in the alternative that it is entitled to a new trial on the ground that the Court's decision is based largely on the unreliable testimony of Roadway's Mr. Ruff.

Regarding the jury trial, Volvo contends that it is entitled to entry of judgment in its favor because the Plaintiffs failed to establish Volvo–White's liability for crashworthiness in product defect. Alternatively, Volvo–White maintains that it is entitled to a new trial due to the various errors in this Court's evidentiary rulings, including (1) permitting Plaintiff Conway's testimony regarding his safe driving records; (2) permitting Plaintiffs' experts to state opinions in areas that they had no expertise; (3) permitting Plaintiffs' experts to introduce new issues at the time of trial; (4) permitting the jury to consider evidence that the Plaintiff was totally disabled and further to make an award for total disability.

Volvo–White further moves in their post-trial briefs for a mistrial on the grounds that the jury had been tainted through a conversation by one of the Plaintiffs' experts with a juror; and that the Plaintiffs' closing argument provoked punishment and parochialism and, further, misstated Conway's liability to Roadway for payments under Roadway Express' workmen's compensation benefits.

Finally, Volvo–White cited errors in this Court's jury instructions and the interrogatories submitted to the jury as entitling it to a general new trial.[3]

On August 10, 1987, Volvo–White supplemented its brief with reference to the opinion filed by the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, in the case of *In re White Motor Credit Corp.*, 75 B.R. 944 (Bkrtcy. N.D.Ohio 1987). In that opinion, the Bankruptcy Court found that the August 20, 1981 Order approving the sale of White Motor's assets to Volvo, by its terms, precluded imposition of successor liability since the claims underlying this liability are discharged in White Motor's confirmed plan of reorganization. Since the successor liability theory advanced in this case was based upon the purchase of the same assets referred to by the Bankruptcy Court in its opinion, Volvo–White requested that this Court consider the opinion in ruling upon its post-trial motions.

Plaintiffs responded to Volvo–White's request to submit the issues addressed in the Bankruptcy Court's decision by arguing that Volvo–White had either waived, or should be estopped from raising, these arguments.[4]

On December 30, 1987, this Court entertained argument on the various issues involved in this case. Thereafter, the parties filed briefs relating to the issues entertained at oral argument.

The Court will consider the above issues in the order listed in Volvo–White's post trial brief.

## SUCCESSOR CORPORATE LIABILITY

Under the well settled rule of corporate law, where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts of the transferror. *Polius v. Clark Equipment Co.*, 802 F.2d 75 (3d Cir.1986); *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981); 15 W. Fletcher, *Cyclopedia of the Law of Private Corporations*,

---

**3.** Volvo–White maintained the jury instructions and interrogatories were in error regarding (1) the time at which the jury was to determine whether the vehicle's condition was defective, i.e. the court erred in instructing the jury to determine whether the vehicle was defective at the time of the accident instead of at the time of the vehicle's sale; (2) errors in the jury's instructions relating to potential liability of National; (3) for failing to instruct the jury in accordance with the criteria established for crashworthiness cases in *Huddell;* (4) for refusing to charge the jury on assumption of the risk; (5) for errors in the court's instruction on Workmen's compensation repayment; and (6) for instructing the jury to compare the fault of Volvo–White with the fault of National in the event that the jury somehow found both Volvo–White and National liable for the defective condition of the product.

**4.** Volvo–White's response to this argument clearly demonstrates that a finding of waiver or estoppel would be inappropriate and we hereby adopt its reasoning as our own.

§ 7122 (Perm.Ed.1983). The general rule of corporate non-liability has, in effect, served as a security blanket which protects corporate successors from unknown or contingent liabilities of their predecessors. It is premised upon the notion that a corporation's mere succession to another corporations's property is not a sufficient basis upon which to impose liability. *Id.; See also* Note, *The Inconsistencies and Confusion of Successor Corporations Liability in Product Liability Claims,* 34 Drake L.Rev. 161, 163 (1984–85); Note, *Assumption of Products Liability in Corporate Acquisitions,* 55 B.U.L.Rev. 86, 93 (1975).

■ Four exceptions to the general rule of non-liability are widely recognized in Pennsylvania and for that matter most jurisdictions. The purchaser may be liable where: (1) it assumes liabilities through an express or implied agreement; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the transferror corporation; or (4) the transaction is fraudulently entered into to escape liability. *See Polius,* 802 F.2d at 78; *Philadelphia Elec. Co. v. Hercules,* 762 F.2d 303, 308–309 (3d Cir.1985); *Dawejko,* 290 Pa.Super. at 18, 434 A.2d 106. A fifth circumstance, sometimes included as an exception to the general rule, is where the transfer was without adequate consideration and provisions were not made for creditors of the transferror. *Dawejko,* 290 Pa.Super. at 18, 434 A.2d 106.

As our Third Circuit pointed out in *Polius,* some courts have found the traditional exceptions inadequate:

Application of traditional corporate doctrine to tort actions, however, has caused some dissatisfaction. Advocates of change have proposed variations that seek a responsible defendant to satisfy the claims of persons injured by corporate products. *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145 (1st Cir.1974).

The New Jersey Supreme Court observed that traditional corporate law limits the number of those subject to liability "and places unwarranted emphasis on the form rather than the practical effect of a particular corporate transaction." *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 341–42, 431 A.2d 811, 816 (1981).

From the perspective of the injured Plaintiff, the Michigan Supreme Court commented, "distinctions between the types of corporate transfers are wholly unmeaningful". *Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 419, 244 N.W.2d 873, 878 (1976).

*Polius v. Clark Equipment Co.,* 802 F.2d 75, 78 (3d Cir.1986).

In response to the perceived inequities of the traditional rule, some jurisdictions have expanded the exceptions to successor corporation immunity. The cases are strongly influenced by the social and economic concerns implicit in strict products liability promulgated in Restatement (Second) of Torts § 402A (1965).[5]

The cases may be roughly divided into two groups. The first group follows what is sometimes called the "continuity of enterprise" theory. The Michigan Supreme

---

**5.** The purpose of the rule of strict tort liability "is to insure that the cost of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 63, 27 Cal.Rptr. 697, 377 P.2d 897 (1963).

The rule is promulgated in the Restatement (Second) of Torts § 402A which provides:

(1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) the rule stated in subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Court in *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976) stated the guidelines for the doctrine:

(1) the acquiring corporation retains the predecessor's key personnel, production facilities, and general business operation;

(2) the transferror dissolves following the acquisition;

(3) the purchaser assumes the seller's liabilities and obligations necessary to continue its normal operation;

(4) the transferee holds itself out to the world as the continuation of the transferror.

The second group of cases is identified with the California Supreme Court decision in *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977), which adopts what is popularly known as "the product line" approach. Following this approach, a successor that continues to manufacture the same product line as the predecessor, under the same name, with no outward indication of any change of ownership of the business could be held liable on product liability claims resulting from products manufactured by the predecessor. The Court in *Ray*, justified the extension of liability to a successor corporation not otherwise responsible because of: (1) the virtual destruction of the Plaintiff's remedies against the original manufacturer through the acquisition by the successor; (2) the successor's ability to assume the original manufacturer's risk spreading rule; and (3) the fairness of requiring the successor to assume responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. *Ray*, 19 Cal.3d at 33–34, 136 Cal.Rptr. at 580, 560 P.2d at 9.

Following the lead of the *Ray* Court, the Supreme Court of New Jersey in *Ramirez v. Amsted Industries, Inc.*, 86 N.J. 332, 431 A.2d 811 (1981) adopted the product line exception formulating its rule as follows:

[W]e hold that where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchase corporation is strictly liable for injuries caused by defects in units of the same product, even if previously manufactured and distributed by the selling corporation or its predecessor.

86 N.J. at 358, 431 A.2d at 825.

The Court justified its holding by stating: The social policies underlying strict products liability in New Jersey are best served by extending strict liability to a successor corporation that acquires the business assets and continues to manufacture essentially the same line of products as its predecessor, particularly where the successor corporation benefits from trading its product line on the name of the predecessor and takes advantage from its accumulated goodwill, business reputation and established customers.

In turn, the Superior Court of Pennsylvania in *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981) followed the lead of the other courts to expand the exceptions to the traditional rule. The Plaintiff in *Dawejko* was injured as a result of a malfunction in a defective lifting machine manufactured by the Defendant's predecessor. The predecessor had gone out of business after the sale of its assets to the Defendant which included the predecessor's trademark and good will. After briefly reviewing the history of successor corporation liability, the Court noted that public policy required the adoption of a new rule. The Court went on to state:

We also believe it better not to phrase the new exception too tightly. Given its philosophical origins, it should be phrased in general terms, so that in an particular case the court may consider whether it is just to impose liability on the successor corporation. The various factors identified in the several cases discussed above will always be pertinent— for example whether the successor corporation advertised itself as an ongoing enterprise, *Cyr v. B. Offen & Co., supra;* or whether it maintained the same product, name, personnel, property and

clients, *Turner v. Bituminous Casualty Co., supra;* or whether it acquired the predecessor corporation's name and goodwill, and required the predecessor to dissolve, *Knapp v. North American Rockwell Co.* [506 F.2d 361 (3rd Cir. 1974)], *supra.* Also, it will always be useful to consider whether the three-part test stated in *Ray v. Alad Corp., supra,* has been met. The exception will more likely realize its reason for being, however, if such details are not made part of its formulation. The formulation of the court in *Ramirez v. Amsted Industries, Inc., supra,* is well put, and we adopt it. *Dawejko,* 290 Pa.Super. at 26, 434 A.2d 106.

■ Thus, although the Court seemed particularly swayed by the *Ramirez* case, it adopted what appears to be a combination of factors drawn from the various considerations in the "product line" theory and "continuity of enterprise" theory. In that regard, a court should approach a Pennsylvania product-line case by making the following inquiries: (1) whether there was an acquisition of all or substantially all the manufacturing assets (even if exclusively for cash); (2) whether the successor undertook essentially the same manufacturing operation; (3) whether the successor held itself out as the ongoing concern of the predecessor; (4) whether the successor maintained the product name, personnel, property, and clients of its predecessor; (5) whether the successor maintained the predecessor's name, acquired its goodwill and required the predecessor to dissolve; (6) whether the successor's acquisition of

the business caused the virtual destruction of the plaintiff's remedies against the original manufacturer; (7) whether the successor has the ability to assume the original manufacturer's risk spreading role; and (8) whether it would be fair to require the successor to assume the original manufacturer's liability in consideration for the enjoyment of the predecessor's good will.

Unfortunately, the Superior Court did not indicate what degree of weight to attach to each factor and also did not indicate whether the presence of all factors is a prerequisite to the imposition of liability. However, the general tone of the opinion suggests that a Court must look to the totality of the circumstances of each case and then determine whether it is "just to impose liability on the successor corporation." Clearly, such a requirement will tend to lead to inconsistent results.

The rationale behind the product line and continuity of enterprise theories have come under a significant amount of criticism. For instance, in *Polius v. Clark Equipment Co.,* 802 F.2d 75 (3d Cir.1986), the Court's opinion suggested that the policy considerations at the root of the two theories breaks down under close scrutiny and suggests that the two theories have "serious shortcomings in the reasoning used to support the theory". *Id.* at p. 82.[6] Moreover, the *Polius* Court considered ill conceived these theories which seemingly brush aside the notion of a causal relationship between the Defendants' acts and the Plaintiff's injuries—a concept that is fundamental to tort law. *Id.* at 81. *See also*

---

**6.** Professor Michael D. Green has summarized the variety of justifications used to advocate liberal successor liability law as follows:

"These rationales are: (1) despite a change in ownership, courts should treat the successor as if it were the predecessor because no change apparent to customers has taken place; (2) the successor that obtains the predecessor's goodwill and benefits from it should also assume the predecessor's liabilities; (3) the successor is best able to provide compensation, spread the risk, and obtain insurance; (4) from the perspective of the injured claimant, the details of a corporate acquisition are irrelevant and therefore should not operate to prevent successor liability; (5) by purchasing the predecessor's assets, the

successor contributes to the destruction of the plaintiff's remedies; (6) after acquiring the predecessor's business, the successor can gauge the risks of the products involved; (7) accident losses can best be minimized by imposing liability on the successor, thereby deterring manufacture of dangerous products and encouraging postsale safety measure; and (8) the successor can act as a conduit to channel losses back to the predecessor by discounting the purchase price in accordance with the predecessor's projected products liability."
*See* Green, *Successor Liability: the Superiority of Statutory Reform to Protect Products Liability Claimants,* 72 Cornell L.Rev. 17, 28 (1986).

Shulman, *Commentary: Successor Corporate Liability and the Inadequacy of the Product Line Continuity Approach*, 31 Wayne L.Rev. 135 (1984); Green, *Successor Liability: The Superiority of Statutory Reform to Protect Product Liability Claimants*, 72 Cornell L.Rev. 17 (1986).

■ To some extent, this Court was also called upon to examine the justifications for the product line exceptions in an attempt to determine whether to recognize the "product line" exception as the law of Pennsylvania. Although the exception has its shortcomings, it is not within the province of this Court to determine what the better rule should be; instead, this Court is bound to apply the substantive law of Pennsylvania. Despite the Defendants' argument to the contrary, we remain steadfast in our decision that the product-line exception is currently the law of Pennsylvania. *See Philadelphia Electric Co. v. Hercules, Inc.*, 762 F.2d 303 (3d Cir.1985); *Polius*, 802 F.2d at 79; *Whitmore v. Bobst Group, Inc.*, 668 F.Supp. 421 (E.D.Pa. 1987); *Shorb by Shorb v. Airco, Inc.*, 644 F.Supp. 923 (E.D.Pa.1986); *Turner v. Mudrick Machine Works*, 589 F.Supp. 771 (E.D.Pa.1984); *Catasauqua Area School District v. Raymark Industries*, 662 F.Supp. 64 (E.D.Pa.1987).

■ In spite of our reaffirmation of this earlier decision, this court after careful review has concluded that the "product line" exception cannot apply under the circumstances of the instant case. Initially, we point out that Volvo–White had little or nothing to do with the loss of the Plaintiffs' remedies against White Motor Corporation. While it is true that Plaintiffs' remedies against White Motor Corporation would have probably been lessened as a result of the bankruptcy proceedings, there is nothing in the record to establish that those remedies would be non existent or severely restricted had a timely proof of claim been filed. To the contrary, the record clearly reflects that there was available insurance coverage and a special fund was set aside in the course of the reorganization to accommodate those in the position of the Plaintiffs. Sadly, however, the Plaintiffs for whatever reason lost their opportunity to take advantage of those measures by failing to timely file a Proof of Claim.

Thus, despite the fact that Plaintiffs no longer have a remedy against White, the loss of that remedy should not prejudice Volvo–White since the destruction of Plaintiffs' remedy occurred as a result of the Plaintiffs' failure to timely file the proof of claim despite being put on notice of the need to do so. Accordingly, it would be inequitable to Volvo White for the Court to view this case as if a remedy against White Motor Corporation had been destroyed as a result of the sale. Since Volvo–White should not be prejudiced by Plaintiffs' omissions, this case should be examined as if the Plaintiffs have a remedy available against White Motor Corporation in the bankruptcy court.

Cases and commentators that have considered whether the continued existence of the original manufacturer or an available remedy through that manufacturer should prohibit successor liability. Although the cases have come down on both sides of the issue, the majority of precedent disallows the imposition of successor liability and appears to present the stronger argument. *Compare Amader v. Pittsburgh Corning Corp.*, 546 F.Supp. 1033, 1036 (E.D.Pa. 1982) (permitting recovery against successor notwithstanding continued viability of predecessor); Phillips, *Product Line Continuity and Successor Corporation Liability*, 58 N.Y.U.L.Rev. 906, 914–17 (1983) (successor should be liable despite predecessor's existence); *with Long John Silver's v. Arch Engineering*, 520 F.Supp. 753, 759 (W.D.Pa.1981) ("Policy considerations suggest to us that as between two on-going businesses of the type involved here, who as far as the record is concerned are equally capable of responding to a claim, the risk of loss should fall on the party who marketed the product"); *Shorb By Shorb v. Airco, Inc.*, 644 F.Supp. 923 (E.D.Pa.1986) (indicating weight of authority has denied recovery); *Reed v. Armstrong Cork Co.*, 577 F.Supp. 246, 251 (E.D.Ark.1983) (applying Pennsylvania law,

denied recovery); *Catasauqua Area School Dist. v. Raymark Industries*, 662 F.Supp. 64 (E.D.Pa.1987) (denying recovery where original manufacturer remained viable); *Schweitzer v. Consolidated Rail Corp.*, 65 B.R. 794 (E.D.Pa.1986) ("when seller continues to be viable, the tort victim has not been deprived of a remedy and there is no need to impose successor liability"); *Pizio v. Johns–Manville Corp.*, 9 Phila. 447, 454 (C.P.Phila.Co.1983) (denied recovery); *LaPollo By LaPollo v. General Elec. Co.*, 664 F.Supp. 178 (D.N.J.1987) (predicting New Jersey Supreme Court would not impose successor liability where predecessor remained a viable entity); Schulman, *Commentary: Successor Corporation Liability, supra*, at 144–45 (when dissolution does not occur nothing would appear to prejudice the rights of future claimants sufficiently to merit the intrusion of successor liability into the bargaining process).

Federal courts interpreting California law have gone a step further in holding that their must not only be a loss of remedy against the predecessor, but that the loss of remedy must be occasioned by the actions of the successor corporation. Such decisions stress the importance of the element of causation, and note that in order to hold a successor liable, more is required than the mere fact that the predecessor cannot be sued. *See In re Related Asbestos Cases*, 578 F.Supp. 91, 94 (N.D.Cal. 1983) (predecessor's unilateral decision to file for Chapter 11 bankruptcy was not influence by successor corporation; "successor liability is only appropriate when the successor corporation actually played some role in curtailing or destroying the plaintiff's remedies"); *Nelson v. Tiffany Industries, Inc.*, 778 F.2d 533 (9th Cir.1985) (product line exception does not apply where there is a good faith dissolution in bankruptcy since the successor corporation has not contributed to or caused the destruction of the plaintiff's remedies).

Although this Court questions whether the California decisions may have read the *Ray* criteria too narrowly by holding that successor must have *caused* the loss of remedy, the necessity that the Plaintiffs' remedies be lost in order for the product line exception to apply is of paramount importance. This is underscored by the *Ray* court when it contrasted the position of its Plaintiff (who had no available redress against the original manufactured) with a case where the injured party could have asserted a claim against the original manufacturer and accordingly was denied recovery against the successor. *Ray*, 19 Cal.3d at 33 n. 6, 136 Cal.Rptr. at 581 n. 6, 560 P.2d at 10 n. 6. The significance of the requirement that a remedy against the predecessor be lost *as a result of the sale* is further accentuated by the fact that the product line exception was developed in response to the very concern that we would have to discount in order to apply the doctrine in this case. *LaPollo By LaPollo v. General Elec. Co.*, 664 F.Supp. 178, 184 (D.N.J.1987).[7]

Additionally, Plaintiffs' claims against Volvo White appear to have been foreclosed by various orders of the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division. In authorizing the sale of assets, the Bankruptcy Court approved in all respects the parties' purchase agreement which stated Volvo would not assume "any liabilities of White (i) for personal injury or property damage, because of alleged negligence or breach of warranty or under any other theory of product liability ..." The Bankruptcy Court has recently ruled that the effect of the earlier order approving the sale agreement is unambiguous regarding the preclusion of successor liability. *In re White Motor Credit Corp.*, 75 B.R. 944 (Bkrtcy. N.D.Ohio 1987). The Court found that the successor liability's preclusion by the language in the purchase agreement and its order approving that agreement, is further corroborated by Volvo's subsequent as-

---

**7.** In applying this requirement, the Court should examine the predecessor's solvency. If the predecessor remained in legal existence but distributed all of its assets to its shareholders and therefore constituted a mere corporate shell, it should be treated as nonexistent. *LaPollo,* 664 F.Supp. at 184.

sumption of a portion of the liability in a supplemental agreement of June 15, 1983, whereby Volvo assumed White's product liability for accidents occurring May 1, 1983 through December 31, 1992; which agreement was approved by Court Order of June 29, 1983.

Our review of the record demonstrates that the Court carefully crafted its orders in an attempt to channel the product liability claims that arose prior to May 1, 1983 to the Estate of White Motor Corporation.

A recent Second Circuit decision held that a Bankruptcy Court's power extends to channeling or confining claims which could otherwise be asserted against third parties to the debtor's estate and that such power extends to claims as well as liens and interest. In *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2nd Cir.1988), *petition for cert. filed*, (June 20, 1988), the Court held:

> The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds, in fact, channeled to the settlement fund and could not be asserted directly against the insurers. The authority to issue the injunction is thus a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds.

The Second Circuit went on to hold that the Bankruptcy Court's power to channel claims is as broad as its power to transfer liens to the proceeds of a sale.

> Moreover, the claims on the property— MacArthur's interest under the vendor's endorsements, or in the earlier stages of this litigation, health claimants' direct action—are different from the liens on real property that are traditionally the subject of the Bankruptcy Court's equitable channeling of power. *But cf. Forde v. Kee–Lox Manufacturing Co.*, 437 F.Supp. 631, 634–35 (W.D.N.Y.1977) (trustee permitted to sell debtor's estate

free and clear of a civil rights claim). *aff'd on other grounds*, 584 F.2d 4 (2d Cir.1978); *Rubinstein v. Alaska Pacific Consortium (In re New England Fish Co.)*, 19 B.R. 323, 329 (Bankr.W.D.Wash. 1982) (same). Nevertheless, the *principle of preserving the debtor's estate for creditors and funneling claims to one proceeding in the bankruptcy court remains the same. The principle is a fundamental part of the bankruptcy law.*

*MacArthur*, 837 F.2d at 94 (emphasis added).

This Court recognizes that to some extent the Bankruptcy Court's approval of the order and its recent decision in *In re White Motor Corporation* is somewhat novel and occurs in an area of the law that is unsettled. Furthermore, it is not without concern that we examine its handling of the decision in *Mooney Aircraft, Inc. v. Foster*, 730 F.2d 367 (5th Cir.1984) which held that a sale free and clear was ineffective against sales non-existent on the date of sale.[8] However, as the Bankruptcy Court noted, the *Mooney* decision was concerned with a liquidation sale under Chapter VII of the Bankruptcy Act of July 1, 1898 entailing a procedure where the money is collected and promptly distributed to known creditors who have filed claims. The Bankruptcy Court points out that *Mooney* did not address the issue of claims under the current code nor a Court's authority to effect a discharge in Chapter 11 Reorganization which provides a debtor and a Court the opportunity to make provisions for unknown creditors and unknown claims. *In re White Motor Corporation*, 75 B.R. at 949. Furthermore, *Mooney* is distinguishable by the fact that the Plaintiffs in that lawsuit had no opportunity to file a proof of claim against the seller's estate, however, the Plaintiffs in the instant matter did have such an opportunity

---

**8.** It is further notable that the Court in *Nelson v. Tiffany Industries, Inc.*, 778 F.2d 533, 537 n. 7 (9th Cir.1985), attempts to undermine the language in *Mooney* that the "bankruptcy court could not sell free and clear of claims asserted

by the victims of an accident which did not occur until 5 years later" in commenting that the statement was dicta and unnecessary to the Court's holding.

and were placed on notice of the requirement to file a proof of claim.

As the concerns seemingly at the core of the *Mooney* decision were contemplated in the orders of the Bankruptcy Court, it appears the *Mooney* decision does not prohibit the Bankruptcy Court's use of its general equitable powers to channel claims and sell assets free and clear. 11 U.S.C. § 105(a).[9]

The stark facts of this case establish that those in the position of the Plaintiffs were not overlooked in the course of the bankruptcy proceedings and the various asset sales. The provisions made for the Plaintiffs, however, required that they file a proof of claim in order to employ those remedies. Despite sufficient notice of this requirement, the Plaintiffs failed to comply with the prerequisites set forth under federal bankruptcy law and the Orders of those federal courts involved in the White Motor Corporation reorganization. Those orders which specified the available remedy also indicate that the assets purchased by Volvo–White would be free and clear of the product liability claims arising before May 1, 1983.

In light of the above, this Court is compelled to find as a matter of fact and law that Volvo–White cannot be held liable as a successor corporation under the totality of circumstances present in this case. Accordingly, an Order will enter setting aside the previous judgments against Volvo–White, and directing the clerk to enter judgment in its favor.

This Court has further considered Volvo–White's motion for a judgment notwithstanding the verdict or for new trial (relating to the jury trial) grounded on (1) insufficiency of proof; (2) various errors in this court's evidentiary rulings and jury instructions/interrogatories; (3) improper contact between a juror and expert witness; and (4) improper comments of Plaintiffs' counsel during closing argument. Having considered those additional arguments, this Court hereby denies those motions and will succinctly state our reasons in an addendum to this opinion. The Addendum and an appropriate Order follows.

### ADDENDUM

The following arguments of Volvo White have been considered and rejected.

*Errors in evidentiary rulings:*

Error in allowing Mr. Conway to testify about his safe driving record.

The Court finds at most harmless error in allowing Mr. Conway to testify concerning his safe driving record in order to show that he wore his seatbelt on the day of the accident and to rebut any negative inference of Defendants regarding Mr. Conway's ability to operate the vehicle.

*Errors in allowing Plaintiffs' experts to testify in areas where they had no expertise and to new issues.*

The experts in this matter testified to matters well within their expertise; fur-

**9.** The Bankruptcy Court specifically held that the sale free and clear of the interest of tort claimants in this case was accomplished pursuant to its general equitable powers given by 11 U.S.C. § 105(a), and not under 11 U.S.C. § 363(f). However, Professor David Gray Carlson argues that Section 11 U.S.C. § 363(f)(5) of the Bankruptcy Code should be read to permit the foreclosure of future claimants from proceeding against successor corporations where a fund is created to which the future Plaintiffs' ratable share of cash proceeds would be paid. *See* Carlson, *Successor Liability in Bankruptcy: Some Unifying Themes of Intertemporal Creditor Priorities Credited by Running Covenants, Products Liability and Toxic Waste Cleanup,* 50 Law and Contemporary Problems 119, 127–31 (Spring 1987). In so commenting, Professor Carlson notes that he takes a broader view of the term "creditors" within the meaning of the

Bankruptcy Code than that accepted the our Third Circuit in *Schweitzer v. Consolidated Rail Corp.,* 758 F.2d 936 (3d Cir.1985), *cert. denied,* 474 U.S. 864, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985). However, he found Third Circuit support for such a result in *In re Amatex Corp.,* 755 F.2d 1034, 1044 (3d Cir.1985) (allowing class representative for future tort creditors without deciding that future tort creditors have "claims").

Also, the Court in *In re All American of Ashburn, Inc.,* 56 B.R. 186 (Bkrptcy.N.D.Ga.1986) found that a sale free and clear of all claims pursuant to Bankruptcy Code 11 U.S.C.A. § 363(f) of assets used in the manufacture of an allegedly defective product precluded the application of successor doctrine in product liability suit filed against the purchaser of those assets, where the product liability cause of action arose prior to the date of sale.

thermore, the Defendant grossly mistates its "surprise" as to new issues and the effect of the testimony in this area. Discovery can and does provide the opposing parties an understanding of each other's case but it is only in the actual trial that the totality of the case is revealed. Nothing here fits in the category of surprise entitling the Defendant to a new trial.

*Error in allowing jury to consider evidence and make an award for total disability.*

This issue was totally examined by both parties for the jury's consideration; moreover, the economic expert who testified on behalf of the Plaintiffs couched his calculations and predictions well within the framework of the Pennsylvania Supreme Court's decision in *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980).

*Tainting the jury*

The court's inquiry into these allegation clearly indicate that the juror and expert witness engaged in an unimportant and unintentional contact which resulted in no prejudice to either side.

*Counsel comments provoked punishment and parochialism*

The jury was instructed in this matter as to the appropriate damage considerations. While some comments in the closing argument may have exceeded the bounds of propriety, in this Court's opinion they were insignificant in the totality of the case.

*Errors concerning Court's instruction on Conway's liability to Roadway.*

Subrogation rights growing out of payments for Workmen's Compensation is often a difficult problem to explain to a jury. Indeed, there are often substantial disputes by counsel regarding amounts due for past compensation and potential amounts to accrue in the event of future payment. The jury in this case was made aware by the court of the past and potential liability for repayment of Workmen's Compensation. None of what was submitted was erroneous or prejudicial.

*Errors in the jury instructions and interrogatories*

Three important comments must be made regarding Defendant's argument regarding jury instructions and interrogatories.

1. Neither party submitted interrogatories. The Interrogatories were prepared by the Court during the course of trial.

2. Interrogatories are unable to encompass the entirety of jury instruction and at the same time be succinct enough to be useful. These interrogatories were merely tools to help jury think its way through the full instructions.

3. Third, the Court directed the jury to use the interrogatories to help them arrive at their verdict, but further instructed the jury to apply the totality of law as outlined in the entire charge.

Reference to charge also shows that court properly instructed the jury on the theory of defective product liability and outlined the specific elements of proof required of the Plaintiff.

The Court finds that it did not err in failing to charge on crashworthiness. Plaintiffs repeatedly asserted that they were not proceeded on the theory of crashworthiness it would have been entirely inappropriate to allow the Defendant to introduce the concept into the trial.

The Court charged the jury on the issue of assumption of risk. The burden of proof on this issue was with the Defendant. The jury verdict obviously indicates it rejected the Defendant's position on this issue.

## ORDER

NOW, THIS 27th DAY OF July, 1988, in conformity with the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. This Court amends its findings of fact and conclusions of law to reflect its judgment that Volvo–White may not be held liable under any theory of successor liability in the particular circumstances of this case. Therefore, the judgments entered against Volvo–White in the above-captioned matter are set aside.

2. The Clerk of Courts is directed to enter judgment in favor of Volvo–White.

3. Volvo–White's additional motions for JNOV and new trial (regarding the issues arising out of the jury trial) are denied.