**FIAMINGO MOVING AND STORAGE COMPANY, INC., Anthony Fiamingo, John Fiamingo, Dominick Fiamingo, Frank and Yolanda Fiamingo, James and Catherine Mulcahy, William and Virginia Field, Harry Taylor, Charles Nissler, Plaintiffs,**

v.

**DETROIT DIESEL ALLISON, DIVISION OF GENERAL MOTORS CORPORATION, White Motor Corp., Volvo White Truck Corp., Volvo GM Heavy Truck Corp., Volvo North America Corp., Defendants.**

No. CV–88–2094.

United States District Court, M.D. Pennsylvania.

July 31, 1990.

E. Eugene Yaw, Gary T. Harris, Williamsport, Pa., Christine Waltz, Rockledge, Pa., William A. Heber, Wellsboro, Pa., for plaintiffs.

Gerard F. Lipski, Philadelphia, Pa., for defendants Volvo GM Heavy Truck Corp. and Volvo White Truck Corp.

## MEMORANDUM

McCLURE, District Judge.

### I. BACKGROUND

This products liability action was initiated by a complaint filed December 30, 1988. Plaintiffs allege that defendants' manufacture and marketing of a faulty engine in a 1979 White Truck Tractor caused the engine to malfunction while undergoing repairs at plaintiff's garage, Fiamingo Moving and Storage. That malfunction allegedly led to a fire which ultimately destroyed the entire garage/warehouse complex and multiple items stored there. (Plaintiffs' complaint, filed December 30, 1988, paras. 20–44)

The truck tractor was manufactured by White Motor Corporation ("White"),[1] and the engine was manufactured and sold by Detroit Diesel Allison, a division of General Motors. In August of 1981, White Motor sold a portion of its assets to A.B. Volvo during Chapter 11 reorganization proceedings.[2] Plaintiffs' claims against Volvo

---

1. Plaintiffs' claims against White are based on theories of negligence and strict liability.

2. White, an Ohio corporation, filed bankruptcy proceedings, under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 1101 et seq.) in the United States Bankruptcy Court for the Northern District of Ohio on September 4, 1980.

Following its emergence from bankruptcy, White has undergone several corporate transformations. It subsequently became known as "Northeast Ohio Axle, Inc.," and then, later, as "NEOAX, Inc." It is now doing business as "EnviroSource," a company which provides waste disposal services and is headquartered in Stamford, Connecticut.

White Truck Corporation,[3] Volvo GM Heavy Truck Corporation and Volvo North America Corporation (hereafter collectively referred to as "Volvo defendants") are based on that transfer of assets. They contend that the Volvo defendants expressly agreed to assume liability for tort claims, like those asserted here, arising out of alleged defects in White truck tractors.

Currently before the court is a motion for summary judgment, filed by the Volvo defendants in which they contend that there is no basis for imposing liability against any of them as successor corporations to White. Defendants' motion is granted in part and denied in part. We will grant summary judgment in favor of Volvo GM Heavy Truck Corporation ("Volvo GM") and Volvo White Truck Corporation ("Volvo White") and against all plaintiffs *except* Fiamingo Moving and Storage Company, Inc. ("Fiamingo"), the owner of the 1979 White truck tractor involved in the incident. Partial summary judgment is granted in favor of Volvo GM and Volvo White against Fiamingo with respect to all claims *other than* those asserted for property damage to the truck tractor. Summary judgment in favor of Volvo North America ("VNA") is denied.

## II. DISCUSSION

### A. *Motion for summary judgment standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" F.R. Civ.P. 56(c) (emphasis supplied).

Due to difficulties in ascertaining the current corporate status and present address of White, plaintiffs did not serve EnviroSource until July 13, 1990.

**3.** Volvo White Truck Corporation ("Volvo White") is a Virginia corporation formed in September of 1981 when A.B. Volvo purchased assets from White. Its principal place of business is Greensboro, North Carolina, and one-hundred percent of its stock is owned by Volvo

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra* at 323 and 325, 106 S.Ct. at 2553 and 2553–54.

Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the non-moving party. *Childers v. Joseph,* 842 F.2d 689, 694 (3rd Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248,

North America, which is a wholly-owned subsidiary of A.B. Volvo, a Swedish corporation.

Volvo GM Heavy Truck Corporation ("Volvo GM") was formed as a joint venture between Volvo North America and General Motors. It began doing business on January 1, 1988, and like Volvo White, it, too, has its corporate offices in Greensboro, North Carolina. (See: affidavits of Heino Scharf, attached to defendants' brief filed March 29, 1990 as Exhibits "A" and "B".)

106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3rd Cir.1988).

## B. Successor liability law and indemnification responsibilities of the Volvo defendants

 The case *sub judice* is governed by Pennsylvania successor liability law.[4] When one company sells or transfers assets to another, the general rule is that the transferee does not become liable for the debts or tort liabilities of the transferor. *Conway v. White Trucks*, 692 F.Supp. 442, 448–49 (M.D.Pa.1988). Pennsylvania recognizes five exceptions to this general rule of non-liability. The transferee may be held liable for torts or debts of the transferor if: (1) it expressly or impliedly agreed to accept responsibility for the transferor's obligations; (2) the purported transfer was actually a consolidation or merger; (3) the transferee is a continuation of the transferor company; (4) the transfer was entered into fraudulently to evade liability; or (5) consideration for the transfer was inadequate and provisions were not made for creditors of the transferor (the "product line" exception). *Conway, supra*, at 447.

 In the case *sub judice*, plaintiffs rely on the first exception. They contend that under the terms of the sales agreement and subsequent addenda, the Volvo defendants expressly agreed to assume liability for tort claims such as those asserted here. Volvo entered into a series of agreements with White, and with its successor *sub nom*, NEOAX, Inc. The original purchase agreement, dated June 9, 1981 and executed by A.B. Volvo[5] expressly disavowed any obligation on the part of Volvo to assume liability for tort claims based on alleged defects in truck tractors assembled by White.[6] Subsequent addenda altered that provision. An addendum dated June 15, 1983[7] contained provisions intended to resolve lingering questions about Volvo White's indemnification responsibilities under the original agreement of sale. It provided that:

> Volvo White and White Motor ... acknowledge that a disagreement has arisen as to whether ... obligations [assumed by Volvo White under the purchase agreement] included any obligations regarding 'Legal Warranties' other than the obligation to repair or replace particular components of trucks sold by White Motor which were defective.... Volvo White shall indemnify and save White Motor harmless from and against any judgment entered or assessed by a court of competent jurisdiction ... in connection with any ... suit or claim to the extent such judgment shall be founded or breach of express or legally enforceable implied warranty; provided, however, that such indemnification shall not extend to, and Volvo White will have no obligations with regard to, any award of personal injury or damage to property other than the truck, or components of the truck, which was the subject of the warranty, even if the court makes an award with regard to personal injury or damage to property other than the truck based upon breach of express or legally enforceable implied warranty.

4. In diversity cases, the District Court is bound to follow the substantive law of the state in which the Court sits. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore this court is bound by the decisions of the Supreme Court of Pennsylvania. In the absence of an authoritative pronouncement from the highest court, District Courts are obliged to give due regard to the decisions of the forum state's intermediate appellate court as an indicia of how the state's highest court would decide the issue. *Connecticut Mutual Life Insurance Co. v. Wyman*, 718 F.2d 63, 65 (3rd Cir. 1983) and *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3rd Cir.1985).

5. A.B. Volvo is a Swedish corporation. It is the parent company of Volvo North America and is not a party to this action.

6. Volvo did agree to honor warranties extended by White, but only to the extent of repairing or replacing defective parts. Any obligation to pay bodily injury or damage claims for property other than the product itself were expressly disavowed.

7. The 1983 agreement was contingent upon approval of the bankruptcy court overseeing White's Chapter 11 reorganization. Court approval was granted.

The 1983 addendum also provided that A.B. Volvo agreed to deliver to White a product liability indemnification agreement executed by Volvo North America ("VNA"). Volvo honored that obligation and delivered the agreement as required.

More recently, in June of 1988, VNA executed a second product liability indemnification agreement, whereby it agreed to:

> ... pay on behalf of the *Indemnified Parties* [defined elsewhere in the agreement as NEOAX, Inc. its successors and assigns] all sums which any of them shall become legally obligated to pay as damages because of ... Property Damage caused by an Occurrence, if the ... Property Damage is included within the Completed Operations Hazard or the Products Hazard.

(Plaintiffs' opposing brief, filed April 16, 1990, Exhibit C). The parties' terminology is defined elsewhere in the agreement as follows:

1. Property Damage—includes "physical injury to or destruction of tangible property which occurs during the Indemnification Period."

2. Occurrence—"[A]n accident ... which results in ... Property Damage neither expected nor intended from the Standpoint of the Indemnified Parties."

3. Completed operations hazard—includes "property Damage arising out of WMC Operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the ... Property Damage occurs after such WMC Operations have been completed or abandoned and occurs away from premises owned by or rented to WMC."

4. Products Hazard—includes "property Damage arising out of WMC Products or reliance upon a representation or warranty made at any time with respect thereto, but only if the ... Property Damage occurs away from premises owned by or rented to WMC and after physical possession of such WMC Products has been relinquished to others."

The agreement further provides that VNA's obligation to indemnify remains in effect from May 1, 1983 through December 31, 1992 *or* until VNA's "maximum aggregate liability" of Fifty Million Dollars ($50,000,000.00) is exhausted, whichever comes first.

Considering all of this in the context of defendants' motion, the following facts are relevant. VNA and Volvo White are both parties to one or more indemnification agreements, although the obligations which they agreed to assume differ significantly. In the 1988 addendum, VNA expressly agreed to indemnify White for tort claims such as those asserted in this action. That obligation patently contradicts VNA's assertions that the case against it should be dismissed because plaintiffs can prove no basis for imposing successor liability on it and precludes our granting its motion for summary judgment.

On the other hand, the only indemnification agreement which imposes any obligation on Volvo White is the 1983 agreement, which, as noted above, limits Volvo White's obligations to honoring White's warranties by repairing or replacing defective parts in White truck tractors. We will therefore grant summary judgment in favor of Volvo White as against all plaintiffs *except* Fiamingo, the owner of the 1979 White truck tractor involved in the incident.[8] Partial summary judgment is granted in favor of Volvo GM and against Fiamingo with respect to all claims *other than* those asserted for property damage to the truck tractor.[9]

Volvo GM Heavy Truck Corporation ("Volvo GM") occupies a different position. It was not a party to any of the indemnification agreements and none of the agreements executed by the other Volvo defendants expressly or implicitly impose any obligation on it to indemnify White for any debt or claim asserted against it. Its sole connection with this matter is its corporate relationship to the other two Volvo defendants. Plaintiffs allege in their complaint

---

8. See: Plaintiffs' complaint, filed December 30, 1988, paras. 20 and 26.

9. Fiamingo apparently seeks to recover for the loss of the truck tractor, as well as damage to other personal property, but does not break down its claim into specific amounts. The complaint states only that Fiamingo seeks to recover for damages to real and personal property in excess of $1,160,000.00. (Plaintiffs' complaint, filed December 30, 1988, para. 34).

that Volvo GM is the successor-in-interest to Volvo White and should be held liable on that basis. (Plaintiffs' complaint, filed December 30, 1988, para. 14). Defendants argue, in their brief, that plaintiffs' premise is false and that Volvo GM is not a successor to Volvo White, but did not file any affidavits, deposition excerpts or other evidence in support of that argument. Accordingly, defendants' motion for summary judgment as to Volvo GM as to all plaintiffs is denied as unsupported.[10] Since plaintiffs' claims against Volvo GM are based solely on its alleged successor relationship with Volvo White, its potential liability is likewise limited to claims for replacement of the truck tractor or its component parts.

We will therefore grant summary judgment in favor of Volvo GM as against all plaintiffs *except* Fiamingo. Partial summary judgment is also granted in favor of Volvo GM and against Fiamingo with respect to all claims *other than* those asserted for property damage to the truck tractor.

---

**10.** We note that defendants attached to their brief two affidavits from Heino W. Scharf, Product Assurance Manager for Volvo–GM, regarding, *inter alia*, Volvo's corporate structure. Scharf's affidavits do not state what the relationship is between Volvo GM and Volvo White. If plaintiffs' allegations on this issue are incorrect, a statement to that effect should have been incorporated in Scharf's affidavits.